Wayne L. LACQUEMENT, Appellant,

v.

STATE of Alaska, Appellee.

No. 5741.

Court of Appeals of Alaska.

April 22, 1982.

Allen Beiswenger, Asst. Public Defender, Kenai, and Dana Fabe, Public Defender, Anchorage, for appellant.

Shannon D. Turner, Asst. Dist. Atty., Thomas Wardell, Dist. Atty., Kenai, Barry Jeffrey Stern, Asst. Atty. Gen., and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Wayne L. Lacquement appeals from sentences received upon conviction of three counts of burglary in the first degree, in violation of AS 11.46.300(a)(1).

On September 27, 1980, Lacquement unlawfully entered three adjacent residences in the city of Homer, Alaska; he stole property of value from each home. Later that same day, he was contacted by police and admitted committing the burglaries. Three felony complaints were filed, charging Lacquement with burglary in the first degree in each of the three homes. Thereafter, Lacquement entered pleas of *nolo contendere* to the three charges, a presentence report was prepared, and his sentencing was set for November 17, 1980, before Superior Court Judge James Hanson in Kenai, Alaska.

Under AS 11.46.300(b), burglary in the first degree is a class B felony. As such, the offense is punishable by a maximum penalty of ten years' imprisonment under AS 12.55.125(d), which provides:

A defendant convicted of a class B felony may be sentenced to a definite term of imprisonment of not more than 10 years, and shall be sentenced to the following presumptive terms, subject to adjustment as provided in AS 12.55.155—12.55.175:

(1) if the offense is a second felony conviction, four years;

(2) if the offense is a third felony conviction, six years.

Lacquement had previously been convicted of at least two felony offenses;[1] accordingly, under AS 12.55.125(d)(2), he was subject as a third felony offender to a presumptive sentence of six years for each of his burglary charges.[2]

At Lacquement's sentencing, Judge Hanson found one mitigating factor applicable to all three burglary charges. The judge concluded that Lacquement's prior felony convictions were of a lesser class than his present offenses, pursuant to AS 12.55.-155(d)(8).[3] Given this mitigating factor, the judge was empowered to reduce the period of imprisonment for each of Lacquement's offenses from the presumptive term of six years to an adjusted term of no less than

---

1. Lacquement was convicted in Oklahoma of burglary in the second degree in 1977 and again in 1978. On the latter occasion, he was also convicted for the felony of receiving and concealing stolen property. Because the 1978 burglary and receiving and concealing stolen property charges arose out of the same transaction, these two offenses were treated by the superior court as a single felony conviction for the purposes of presumptive sentencing. *See* AS 12.55.145(a)(3).

2. *See also* AS 12.55.145(a) and 12.55.185(8).

3. AS 12.55.155(d)(8) provides:

(d) The following factors shall be considered by the sentencing court and may mitigate the presumptive terms set out in AS 12.55.125:

. . . .

(8) A prior felony conviction considered for the purpose of invoking the presumptive terms of this chapter was of a less serious class of offense than the present offense . . . .

three years.[4] Judge Hanson ultimately imposed terms of four years, with one year suspended, on each of the three counts of burglary. The sentences on counts I and II were ordered to be served consecutively, with count III to be concurrent. In addition, a probationary period of five years was prescribed as a condition of the suspended jail time. Lacquement's aggregate sentence for the three counts of burglary was thus a term of eight years, with two years suspended and a five-year probationary period.

Lacquement raises a number of interrelated arguments challenging this sentence. He alleges, initially, that the sentencing court failed to give adequate consideration to the mitigating factor that he established. He further contends that the three burglaries of which he was convicted constituted one general transaction, thus requiring the imposition of concurrent sentences and precluding consecutive terms. Alternatively, Lacquement maintains that the consecutive sentences he was given were improper because they exceeded the statutorily mandated presumptive sentence for first degree burglary. Lacquement also argues that his consecutive sentences cannot be upheld because the sentencing judge failed to make any specific finding as to the need for consecutive terms. Finally, Lacquement asserts that the court lacked authority to suspend jail time or to require a period of probation in imposing a mitigated presumptive term of imprisonment. We will briefly address each of these issues.

■ We find little merit to Lacquement's contention that the sentencing judge failed

to give sufficient weight to mitigating factors. The sole mitigating factor Lacquement established was that his previous offenses were of a less serious class than the three burglaries for which he was being sentenced. Here, the sentencing judge recognized that under the provisions of AS 12.55.155(a)(2), he was authorized to reduce, by as much as three years, the presumptive term of six years that was applicable under AS 12.55.125(d)(2) to each of the three first degree burglaries. Far from ignoring the mitigating factor, Judge Hanson did, in fact, exercise his authority to reduce the applicable six-year presumptive term: as to each count, a sentence of four years, with one year suspended, was imposed. As to each count, the reduction approached the maximum permissible reduction of three years. We find that ample consideration was given by the sentencing judge to the mitigating factor established by Lacquement.

Lacquement next challenges the sentencing court's imposition of consecutive terms of imprisonment for two of his burglary convictions. This argument is predicated on the assertion that all three of his burglaries were part of a single, continuing criminal transaction. Thus, according to Lacquement, consecutive sentencing was prohibited. We are unable to agree with Lacquement's characterization of his three burglaries as a single criminal episode.

The provisions of the Alaska Revised Criminal Code expressly authorize judges to impose sentences either concurrently or consecutively. See AS 12.55.025(e).[5] The

---

4. AS 12.55.155(a)(2) provides:

(a) If a defendant is convicted of an offense and is subject to sentencing under AS 12.55.125(c)(1), (c)(3), (d)(1), (d)(2), (e)(1), or (e)(2) of this chapter and

. . . .

(2) the presumptive term of imprisonment is more than four years, the court may decrease the presumptive term by an amount as great as 50 per cent of the presumptive term for factors in mitigation or may increase the presumptive term up to the maximum term of imprisonment for factors in aggravation.

5. AS 12.55.025(e) provides:

If the defendant is convicted of two or more crimes before judgment on either has been entered, any sentences of imprisonment may run concurrently or consecutively, as the court provides. If the court does not specify, the sentences of imprisonment shall run concurrently. If the defendant is imprisoned upon a previous judgment of conviction for a crime, the judgment may provide that the imprisonment commences at the expiration of the term limited by the previous judgment or on the date of imposition of sentence.

authority to impose consecutive sentences is not restricted to cases involving non-presumptive terms. Prior to enactment of AS 12.55.025(e), consecutive sentencing was, similarly, authorized under former AS 11.-05.050.[6] Under this former statute, the rule was well settled that consecutive sentences were permissible for distinct crimes. Even when separate crimes were committed in the course of one general transaction and during an extremely brief period of time, consecutive sentences were authorized, as long as each crime involved a separate culpable act and a separate intent on the part of the perpetrator. *Hunter v. State*, 590 P.2d 888, 903 (Alaska 1979); *Davenport v. State*, 543 P.2d 1204, 1208–10 (Alaska 1975). Thus, the supreme court stated in *Hunter v. State*, 590 P.2d at 903:

> Here, the acts did involve the intent to steal from separate owners and the conduct of stealing separate items from each of the owners. There is a sufficient difference in intent and conduct so that

separate punishment would not impose double jeopardy.[7]

Given the general similarity between AS 12.55.025(e) and former AS 11.05.050, we do not think that AS 12.55.025(e) can properly be read as encompassing a sweeping abandonment of the *Hunter/Davenport* rule as a standard for determining the limits of a sentencing court's legal authority to impose consecutive sentences.

■ Application of this rule to the present case leads to the conclusion that the three burglaries committed by Lacquement constituted separate offenses. Here, Lacquement burglarized three different residences owned by three separate victims. Lacquement's unlawful entry of each of the three residences required separate conduct, and Lacquement was required to form a separate intent to steal property from each of the three homes that he entered. Thus, consecutive sentencing for each burglary was not precluded under the *Hunter/Davenport* rule.[8]

6. Former AS 11.05.050 provided:
   *Consecutive sentences.* If the defendant is convicted of two or more crimes, before judgment on either, the judgment may be that the imprisonment upon one conviction begins at the expiration of the imprisonment for any other of the crimes. If the defendant is imprisoned upon a previous judgment on a conviction for a crime, the judgment may be that the imprisonment commences at the expiration of the term limited by the previous judgment.

7. *See also Cooper v. State*, 595 P.2d 648 (Alaska 1979) (three consecutive sentences for assault with a dangerous weapon approved where the defendant fired shots in rapid succession at three police officers with the intent to harm all three officers); *Mutschler v. State*, 560 P.2d 377 (Alaska 1977) (two consecutive sentences approved where the defendant stabbed two people during a single brief altercation). *Cf. Thessen v. State*, 508 P.2d 1192 (Alaska 1973) (where the defendant committed an arson that resulted in the death of fourteen people, multiple punishment was not permitted because the defendant's conduct consisted of a single criminal act and involved only one criminal intent).

8. We also believe that it is instructive to consider the manner in which the concept of a single, or continuing, criminal transaction is treated in the Alaska Revised Criminal Code to determine whether multiple offenses should be

considered separate crimes in calculating the number of prior felony convictions a person has for the purpose of applying presumptive sentencing provisions. AS 12.55.145(a)(3) provides:

> (a) For purposes of considering prior convictions in imposing sentence under this chapter
>   . . . .
> (3) two or more convictions arising out of a single, continuous criminal episode during which there was no substantial change in the nature of the criminal objective are considered a single conviction, except that offenses committed while attempting to escape or avoid detection or apprehension after the commission of another offense are not part of the same criminal episode or objective.

This treatment appears to be consistent with the *Hunter/Davenport* approach to deciding when consecutive sentences will be permitted. The commentary to AS 12.55.145(a)(3) leaves no room for doubt that Lacquement's conduct in the present case would be regarded as three separate criminal episodes under the new code. The relevant portion of the commentary states:

> Subsection (a)(3) provides that two or more convictions arising out of a 'single, continuous criminal episode' are to be considered a single conviction unless there was a 'substantial change in the nature of the criminal objective.' The phrase 'single, continuous criminal episode' is intended to limit the applicability of this provision to a single

It is additionally asserted by Lacquement that the aggregate term of imprisonment he received—eight years with two suspended—is impermissible because it exceeds the authorized presumptive term of six years for a class B felony, third offense. Lacquement is, of course, correct in maintaining that the applicable six-year presumptive sentence is mandatory and cannot be exceeded absent aggravating factors or exceptional circumstances.[9] The point that he overlooks, however, is simply that his aggregate sentence of eight years with two suspended is not the consequence of an increase in the presumptive term for any single offense he committed. It is the result of the consecutive imposition of sentences for separate and distinct offenses. Lacquement did not commit a single offense; he committed three separate crimes. The aggregate sentence that he received simply reflects this fact.[10]

Lacquement alternatively asserts that consecutive imposition of sentences on counts I and II of his offenses was improper because Judge Hanson failed to make any specific finding to justify the need for consecutive sentences. Because of the nature of Alaska's new sentencing scheme, and especially in light of the legislature's purposes in adopting presumptive sentencing, we believe that Lacquement's contention has considerable merit.

The two-fold goals of our presumptive sentencing provisions were expressed by the legislature in the first section of the revised code's chapter dealing with sentencing. AS 12.55.005 provides, in relevant part:

> *Declaration of purpose.* . . . The legislature finds that the elimination of unjustified disparity in sentences and the attainment of reasonable uniformity in sentences can best be achieved through a sentencing framework fixed by statute as provided in this chapter.

The comprehensive and highly regimented provisions of the presumptive sentencing statutes were enacted to assure that sentencing would become a predictable process and that disparity in sentencing between

criminal event out of which a number of offenses could be charged. For example, the breaking and entering of a building with the intent to commit theft, which can be charged as burglary, and the taking of property in the building, which can be charged as theft. In such an instance, convictions for both burglary and theft would be considered a single conviction under this section. *However, the commission of three burglaries involving three buildings in a single day, would not be considered part of a 'single, continuous criminal episode.'*

Commentary on the Alaska Revised Criminal Code, Senate Journal Supplement No. 47 at 157, 1978 Senate Journal at 1399 (emphasis added).

9. *See* AS 12.55.125(d)(2) and 12.55.125(g); AS 12.55.155 and 12.55.165; *Juneby v. State*, 641 P.2d 823, 830 (Alaska App., 1982).

10. It is well established in Alaska that the aggregate of two or more consecutive sentences can exceed the maximum permissible sentence for any single offense. *See Preston v. State*, 583 P.2d 787, 788 (Alaska 1978); *Thomas v. State*, 566 P.2d 630, 633 (Alaska 1977). Nothing contained in the presumptive sentencing provisions of AS 12.55.125 and 12.55.155 indicates that a different result was intended for presumptive sentences. Similarly, there does not appear to be anything in the difference between the precise language of AS 12.-

55.025(e) and its predecessor, former AS 11.-05.050, to warrant a conclusion that the holdings in *Preston* and *Thomas* should not apply to presumptive sentences under the new code. When sentencing for multiple offenses is subject to the presumptive sentencing provisions of the new code, consecutive imposition of the sentences, as authorized by AS 12.55.025(e), may properly result in an aggregate sentence exceeding either the presumptive or maximum sentence for any single count.

We note that the precise language used by the legislature in AS 12.55.025(e) differs somewhat from the language found in former AS 11.05.050, even though both statutes contain similar provisions generally empowering judges to impose consecutive sentences. Because the question of whether the differing language incorporated in AS 12.55.025(e) was meant to alter prior standards defining the permissible scope of judicial discretion to impose consecutive sentences has not been squarely raised or argued in this case, we expressly decline to reach it. We would emphasize, however, that the permissible scope of judicial discretion to impose consecutive sentences must be distinguished from the separate question, which we do address in this case, of whether AS 12.55.-025(e), like former AS 11.05.050, confers upon sentencing courts the general legal authority, or power, to impose consecutive sentences.

similarly situated offenders would be eliminated.[11]

While AS 12.55.025(e) generally allows sentencing judges authority to decide whether sentences for multiple offenses should be imposed concurrently or consecutively, as did former AS 11.05.050, it is evident that, given presumptive sentencing, unbridled exercise of this authority on an *ad hoc* basis would create enormous problems and thwart the legislative purpose of achieving uniformity in sentencing. Without clear, uniform and comprehensive guidelines to assist sentencing judges in deciding when and to what extent sentences should be made consecutive, significant and arbitrary disparity in sentencing is bound to occur. Some judges may well adopt a policy of imposing sentences concurrently unless there is a compelling showing to justify consecutive sentencing. Other judges might be prone to adopt the opposite policy, routinely imposing consecutive sentences and reserving concurrent sentences for extraordinary cases. Most judges would likely fall somewhere between these two extremes.

The potential for disparity inherent in the language of AS 12.55.025(e) is troublesome indeed, and the legislature's failure to delineate more precise standards for consecutive sentencing is puzzling, since the broad discretion built into the provisions of AS 12.55.025(e) seems antithetical to the relatively inflexible provisions of the presumptive sentencing statutes—an inflexibility expressly calculated to achieve uniformity and avoid disparity.

The risk to the twin legislative goals of achieving uniformity and eliminating disparity that is engendered by the code's utter lack of express guidance as to imposition of consecutive sentences in cases involving presumptive sentencing is exacerbated, moreover, by the fact that individuals sentenced to serve presumptive terms are not subject to discretionary release on parole.[12] Accordingly, if one judge imposes two presumptive sentences of six years concurrently and another, under similar circumstances, imposes the same terms consecutively, the inevitable disparity between the six-year and twelve-year sentences could not be mitigated, since there is no possibility of early discretionary release on parole for the person given the consecutive sentences.

Under prior law, uniformity in sentencing was not a primary concern, and consequently the Alaska Supreme Court developed few guidelines with respect to imposition of consecutive sentences.[13] Instead of inquiring whether the decision to sentence consecutively in a given case was an appropriate exercise of discretion, the approach generally adopted by the supreme court was to assess the aggregate sentence and to determine whether it was clearly mistaken. *See, e.g., Neal v. State*, 628 P.2d 19, 21 (Alaska 1981). *Mutschler v. State*, 560 P.2d 377, 381 (Alaska 1977). Thus, the *Hunter/Davenport* rule by and large determined both the extent of a sentencing court's legal authority to sentence consecutively and the extent to which the court's discretion in imposing consecutive sentences would be upheld.[14] The supreme court did at one time adopt the position that a judge imposing consecutive sentences was required, in conformity with American Bar Association Standards, to make an affirmative finding that confinement for the full, aggregate term was actually necessary to protect the public. *Cleary v. State*, 548 P.2d 952 (Alaska 1976). However, in *Mutschler v. State*, 560 P.2d at 381, the court restricted the requirement of affirmative findings in accordance with the

11. *See Juneby v. State*, 641 P.2d 823, 829–30 (Alaska App., 1982).

12. *See* AS 33.15.180(a), (c); Alaska Parole Board Regulations § .025. *See also Juneby v. State*, 641 P.2d 823, 844 (Alaska App., 1982).

13. *See Neal v. State*, 628 P.2d 19, 20 (Alaska 1981).

14. In *Neal v. State*, 628 P.2d at 20, the supreme court stated:

We have previously left the decision whether or not to impose consecutive sentences largely to the sentencing court's discretion, absent double jeopardy problems. [Footnote omitted.]

ABA Standards to be applicable only in those cases where consecutive sentences resulted in an aggregate term exceeding the maximum sentence permissible for a single offense.[15]

▮ Neither party in this case has made an effort to suggest appropriate criteria for effective guidance with respect to consecutive imposition of presumptive sentences. Nor do we believe this case to be an appropriate vehicle for an attempt to establish detailed, uniform policies for consecutive sentencing under the revised code. In order to assure that the goals of the presumptive sentencing statutes are not subverted, however, we think that at the very least *Mutschler's* requirement of an affirmative finding by the sentencing court that confinement of the defendant for the aggregate period of a consecutive sentence is necessary to protect the public must be extended to apply in all cases where imposition of consecutive presumptive terms would result in an aggregate sentence that exceeds the presumptive term for a single count.[16]

▮ Here, because the aggregate sentence of eight years with two years suspended exceeds the presumptive term of six years for each of Lacquement's three bur-

glaries, we conclude that a remand is necessary to permit the court to determine if confinement of Lacquement for the aggregate period of his sentence is actually necessary to protect the public from serious danger.

The final contention raised by Lacquement is that, under provisions of the revised code, the sentencing judge was prohibited from suspending a portion of the jail sentences imposed on the three counts of burglary and imposing a period of probation instead. In support of this contention, Lacquement relies on AS 12.55.125(g)(1), which provides, in part:

(g) If a defendant is sentenced under ... (d)(2) ... of this section, except to the extent permitted under AS 12.55.155–12.55.175:

(1) imprisonment may not be suspended under AS 12.55.80 [*sic*, AS 12.55.080]

. . . .

This provision, however, must be read in conjunction with other relevant sentencing provisions. Under the provisions of the new code, sentencing judges are expressly empowered to order probation and to suspend the execution of sentences. *See* AS 12.55.015(a) and 12.55.080. It is obvious that AS 12.55.125(g), one of the subsections included in the section generally establish-

---

**15.** In its present form, the applicable ABA standard considered in *Cleary* and *Mutschler* is set forth in section 4.5(b)(iv) of the ABA Standards Relating to Sentencing Alternatives and Procedures (Approved Draft 1979), which states:

Imposition of a sentence which is consecutive in whole or in part to any other sentence should require the affirmative action of the sentencing court. The court should be authorized to impose such a sentence only after a finding that confinement for such a term is necessary in order to protect the public from further serious criminal conduct by the defendant . . . .

**16.** We further believe that an affirmative finding of necessity by the sentencing court in all cases where presumptive sentences are consecutively imposed conforms to the unique nature of presumptive sentences. When no aggravating or mitigating factors are established and there are no exceptional circumstances, the statutorily prescribed presumptive sentence is mandatory. Even with aggravating and mitigating factors, the discretion of the sentencing court is circumscribed. *See, e.g., Juneby v.*

*State,* 641 P.2d 823, 832 (Alaska App., 1982). The rationale of *Mutschler's* holding that an affirmative finding of necessity is required only when the aggregate sentence exceeds the maximum sentence for a single count is that only in such cases does the sentencing court impose an aggregate term that could not have been lawfully imposed under a single count. The same rationale applies to consecutive imposition of presumptive sentences. In the present case, for example, because no aggravating factors were established by the state, the maximum sentence of imprisonment that the court could have imposed for any single count was the presumptive term of six years. The aggregate sentence actually imposed—eight years, with two years suspended and five years of probation—was made possible exclusively by reliance on consecutive sentencing; the reasoning of the court in *Mutschler* thus applies to this case, and an affirmative finding of necessity is warranted, even though the theoretical maximum of ten years for any single count for first-degree burglary was not exceeded.

ing presumptive sentences, was intended to preclude the use of suspended sentences where a specific presumptive term was required. Significantly, however, exceptions to this prohibition against suspended sentences are expressly built into the language of AS 12.55.125(g)(1) itself. Thus, AS 12.-55.125(g)(1) provides that individuals who are presumptively sentenced may not have their terms of imprisonment suspended "except to the extent permitted under AS 12.-55.155–12.55.175." We believe that, when the presumptive sentencing statutes are read as a whole, it is apparent that limited use of both suspended jail time and probation is in fact permitted under AS 12.55.155, and that the sentence in this case did not exceed permissible limitations.

AS 12.55.155 deals with adjustment of presumptive sentences for aggravating and mitigating factors. Under its provisions, sentences such as Lacquement's could be increased to the maximum of ten years for aggravating factors or decreased to a minimum of three years for mitigating factors. See AS 12.55.155(a)(2). It should be apparent that, to the extent the provisions of AS 12.55.155 give sentencing judges the discretion to increase or decrease the length of a jail term that must actually be served, a fortiori, they confer the authority to adjust sentences by means less drastic than an adjustment of actual time to be served.

The legislature's commentary to AS 12.-55.125(g) confirms that this provision was not intended as a wholesale abolition of probation in cases involving presumptive sentencing. The pertinent commentary provides:

> [S]ubsection (g) provides that a defendant who is subject to presumptive sentencing must serve at least the presumptive term imposed, adjusted for aggravating and mitigating factors. [The defendant] may not be placed on probation for the presumptive term . . . .

Commentary on the Alaska Revised Criminal Code, Senate Journal Supplement No. 47 at 155, 1978 Senate Journal 1399.

It is thus manifest that AS 12.55.-125(g) was intended to limit a sentencing judge's discretion to impose probation only to the extent that the judge is required by the code to impose a specified term of incarceration. In cases where a presumptive sentence applies and no aggravating or mitigating factors exist, the sentencing judge is required to impose the presumptive term, and AS 12.55.125(g) prohibits suspension of any portion of the sentence. On the other hand, when aggravating or mitigating factors exist, the court is empowered to use suspended jail time, coupled with probation, as a means of adjusting the presumptive term. In such cases, the prohibition of AS 12.55.125(g) will apply only when a suspended sentence would fall below the minimum adjusted presumptive term prescribed under AS 12.55.155 for a given case.[17]

Here, the lowest adjusted presumptive sentence permitted for each of Lacquement's crimes was three years (50 per cent of the six-year presumptive sentence). See AS 12.55.155(a)(2). This three-year mandatory minimum sentence could not have been suspended and replaced by probation. Given the existence of mitigating factors, however, it was permissible for the sentencing judge to impose a term greater than the minimal three-year period and suspend any portion of that term that exceeded the three-year minimum.

This is precisely what occurred in the present case: on each count, Lacquement was given a sentence of four years, with one year suspended. The resulting three-year unsuspended sentence on each count was at, but not below, the minimum adjusted presumptive sentence. Under the provisions of AS 12.55.015(a)(2) and 12.55.080, the sentencing judge was expressly authorized to require a period of probation to be served as a condition of the suspended jail

17. In cases where only aggravating factors are established, the minimum adjusted presumptive term will continue to be the same as the statutorily fixed presumptive term. In such cases an actual term of incarceration at least equal to the presumptive term will be required by AS 12.55.155(g).

time and this period could properly be made to exceed the period of suspended jail time. *See Reynolds v. State*, 595 P.2d 21 (Alaska 1979); *Tiedeman v. State*, 576 P.2d 114 (Alaska 1978). The probation was therefore also legally authorized.

The sentence imposed by the superior court is VACATED and this case is RE-MANDED for resentencing. If, upon resentencing, the superior court again determines that consecutive sentences are necessary, express findings conforming to the requirements expressed in this opinion shall be entered on the record.